IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Robert Anthony James, | ) | Case No. 8:13-cv-1738-TMC-JDA |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Cecilia R. Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Respondent's motion for summary judgment [Doc. 22]. Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on June 21, 2013.[1] [Doc. 1.] On November 22, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 21, 22.] On November 25, 2013, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 23.] On February 27, 2014, Petitioner filed a response in opposition to Respondent's motion. [Doc. 32.] Accordingly, the motion is ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Therefore, this action was filed on June 21, 2013. [Doc. 1-3 (envelope stamped by correctional institution on June 21, 2013).]

## BACKGROUND

Petitioner is presently confined and serving his sentence at Kershaw Correctional Institution ("Kershaw"). [Doc. 1 at 1.] In August 1999, a Richland County grand jury indicted Petitioner for two counts of armed robbery, assault and battery with intent to kill, two counts of possession of a firearm or knife during commission of or attempt to commit violent crime, two counts of kidnapping, and criminal sexual conduct in the first degree. [Doc. 21-28.] Petitioner proceeded to trial, represented by John Shupper ("Shupper"), and was found guilty of all charges in September 2009 [Doc. 21-27 at 8.] Judge Costa M. Pleicones sentenced Petitioner to thirty years for the criminal sexual conduct charge, ten years for armed robbery (to be served consecutively), thirty years for the second armed robbery charge (to be served concurrently), thirty years for kidnapping (to be served concurrently), ten years for assault with intent to kill (to be served concurrently), and five years on each possession of firearms charge (to be served concurrently), for a total of forty years. [*Id.* at 30–31.]

**Direct Appeal**

Petitioner timely filed and served a notice of appeal. On September 13, 2000, Wanda H. Haile of the South Carolina Office of Appellate Defense filed an *Anders* brief[2] on Petitioner's behalf in the South Carolina Court of Appeals, as well as a petition to be relieved as counsel. [Doc. 21-1.] The brief raised the following issue:

The lower court erred in denying appellant's motion for a severance.

_____

[2]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

[*Id.* at 4.] Petitioner filed a pro se response, which Respondent represents cannot be found by the Court of Appeals' Clerk's Office.[3] [Doc. 21 at 2.] The appeals court dismissed the appeal and affirmed the convictions on March 21, 2001. [Doc. 21-2.] Remittitur issued on April 4, 2001. [Doc. 21-3.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on August 8, 2001 [Doc. 21-27 at 46.] Petitioner raised the following grounds for relief:

> Issue 1: Trial counsel fail[ed] to adequately prepare for the case, to do a legal and factual investigation[,] to exercise due diligence in the preparation of the defense's case and to the circumstances of it deprived [Petitioner] of the right to effective assistance of counsel in violation of Article I §§ 3, 14 of the State Constitution as well as the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

In support of this issue, Petitioner alleged trial counsel failed to obtain the assistance of experts, erroneously advised Petitioner not to take the stand, failed to file a motion to quash the indictments, , and failed to properly object to jury instructions. [*Id.* at 51.]

> Issue 2: Appellate counsel was ineffective in failing to raise issues preserved below, which would have entitled [Petitioner] to reversal on appeal. A defendant is constitutionally entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830 (1985); *see also, Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983) (appellate counsel's duty to raise issues on appeal).

---

[3] Although the Court is unable to determine what Petitioner raised in his pro se response to the Court of Appeals, this missing document does not preclude the Court from applying a procedural bar to Grounds Two through Eight because Petitioner did not appeal the Court of Appeals decision to the South Carolina Supreme Court, and "[t]o satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).

Petitioner alleged appellate counsel failed to advise Petitioner of the right to request a rehearing, failed to adequately raise the preserved issue of severance, failed to raise the preserved issue of speedy trial, and failed to raise the preserved issue of a directed verdict.

On January 7, 2005, represented by Tara Dawn Shurling ("Shurling"), Petitioner filed an amended PCR application. In the amended application, Petitioner raised eleven issues for review (quoted verbatim):

> Issue 1: Trial judge erred in denying defense's motion to quash indictment and dismiss charges due to State's failure to timely act on arrest warrants, violation of Rule 3(c), SCRCrimP. The Solicitor failed to file the indictments with the Clerk of Court (see indictments, they have no clock stamp). Also, State lacked Subject Matter Jurisdiction by State's failure to comply.

> Issue 2: Trial Counsel was ineffective for failing to object to "sleeping jurors" not being removed or questioned.

> Issue 3: Trial counsel was ineffective in failing to object to trial Court's erroneous instructions. The Court instructed the jury on the elements of accomplice liability, referred to as aiding and abetting, (or, the hand of one is the hand of all), when [Petitioner] was charged as the principal. This instruction impermissibly dilutes the presumption of innocence. *State v. LaBarge*, 275 S.C. 168, 268 S.E.2d 281 (1980).

> Issue 4: Trial Court lacked Subject Matter Jurisdiction due to prohibited practice of prosecutors appearing as sole witness before Grand Jury.

> Issue 5: Trial Counsel was ineffective for allowing the violation of [Petitioner's] Due Process Right to a Speedy Trial as [Petitioner] awaited trial for two years and nine months. The delay in bringing the case to trial undoubtedly prejudiced [Petitioner] because of forgotten facts and confused and incomplete recollections. [Petitioner's] alibi witness could not rely on her memory and the [Petitioner] himself could not remember with certainty what had occurred seven months prior to his arrest. Further, the memories and whereabouts of defense witnesses were compromised and lost. There were no continuance orders that mention exceptional circumstances, and the State has never offered any justification for the significant delay.

> Issue 6: Trial counsel failed to adequately prepare for case...by failing to obtain the assistance of experts.

4

Issue 7: Appellate Counsel was ineffective in failing to sufficiently raise any arguable issues in brief on Appeal. Ms. Haile filed an Anders Brief. Arguable issues included needed severance and imputed guilt of [Petitioner] because of being tried with his co-defendant. [Petitioner] contends that the transcript amply documents significant preserved errors and [Petitioner's] trial counsel provided a six page letter to Ms. Haile that detailed many arguable, preserved issues.

Issue 8: Trial counsel failed to call witnesses that could dispute the State's theory that [Petitioner] lived at [redacted]. If the landlord had been asked to testify he would have said that [Petitioner] did not live there and was not even allowed on the property. Also, Henrietta Jordon (former girlfriend) could have been an effective alibi witness if she had been called to testify nearer to the time of the incident – but, because it took so long to get to trial, she could no longer state with certainty how long she and [Petitioner] were together on that day. Trial Counsel was informed about all this and said he would look into it, but never talked about it again. State's witness and victim, Ms. [Redacted] frequently stated that she was "not sure" and "I honestly can't say who did what – it happened so fast." The delay in bringing the case to trial undoubtedly prejudiced [Petitioner] because of forgotten facts and confused and incomplete recollections.

Issue 9: Trial counsel was ineffective for failing to object when the State pushed to try [Petitioner] under the *new* Armed Robbery Statute. The State pushed to try [Petitioner] under the *new* Armed Robbery Statute because where under the old statute, a main element is that the suspect had to actually be armed and the offense predated the new statute.

Issue 10: Indictments should have been quashed instead of amended. Trial Counsel erred in not objecting to the Judge deleting from the indictments with his own pen. (See indictments in the back of the transcript–they still read out completely–Tr. pp. 1362 & 1363)

Issue 11: Trial counsel was ineffective for failing to impeach State's witness Dr. Stacey Smithson (Tr. pp. 889–903). The State described the attach on the victim as "vicious." Dr. Smithson corroborated these claims stating that he found redness, abrasions, and lacerations, etc. However, Dr. Smithson's written examination report states that there were no signs of trauma on any part of the victim's body. (p. 3, and 6 of his notes/report)

A hearing was held on the PCR application on January 14, 2005, where Petitioner was represented by Shurling. [Doc. 21-27 at 64.] Testimony was received from Petitioner

and from Shupper. [*Id*. at 65.] On August 19, 2005, the PCR court filed an order denying and dismissing the application with prejudice. [Doc. 21-27 at 170–76.] After examining each of Petitioner's claims, the PCR court's order concluded the Petitioner "has not established any constitutional violations or deprivations that would require this court to grant his application..." [Doc. 21-7 at 176.] The PCR court's order did not address the ineffectiveness of appellate counsel, but Petitioner did not file a South Carolina Rule of Civil Procedure Rule 59(e) motion to alter or amend the judgment. [Doc. 21 at 4.]

A notice of appeal was timely filed and served. [Doc. 21-4.] On February 27, 2008, Eleanor Duffy Cleary ("Cleary") of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

> Whether trial counsel was ineffective for failing to argue that petitioner's indictments should be dismissed because the state violated his Sixth Amendment right to a speedy trial and petitioner was prejudiced by this deficiency because the indictments would have been dismissed had the issue been properly raised to the trial judge?

[*Id.*] The Supreme Court of South Carolina transferred the matter to the South Carolina Court of Appeals, which granted certiorari and directed the parties to brief the issues. [Doc. 21-6.] The Court of Appeals heard oral arguments and issued an unpublished opinion on October 27, 2011, affirming Petitioner's convictions and sentences. [Doc. 21-10.] Petitioner filed a petition for rehearing, which was denied on December 20, 2011. [*Id*. at 20–21.] Petitioner then filed a petition for writ of certiorari to the South Carolina Supreme Court, which was granted on April 3, 2012, but subsequently dismissed as "improvidently

granted" on November 21, 2012. [Doc. 21-17.] Remittitur was issued on December 7, 2012. [Doc. 21-18.]

### Petition for Writ of Habeas Corpus

As stated, Petitioner filed this Petition for writ of habeas corpus on June 21, 2013, pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief, quoted verbatim:

**Ground One**:     Ineffective assistance of trial counsel for allowing the violation of Petitioner's Sixth Amendment right to a speedy trial.

*Supporting Facts:*     The state held Petitioner in jail for 993 days before calling his case to trial. Petitioner filed pro se speedy trial motions 1998 and 1999. At trial petitioner moved to dismiss the charges because the state failed to provide him a speedy trial. Trial judge made three significant factual findings: (1) Petitioner wanted a speedy trial, (2) the delay was "horrendous," and )(3) prosecution's justification for the delay was "not terribly well explained." Tr. P. 31, 32, 34, 35, 39, 41 and 44. Trial counsel failed to argue prejudice or cite United States Supreme Court precedent requiring dismissal.

**Ground Two**:     Trial counsel was ineffective for failing to object to "sleeping jurors" not being removed or questioned.

*Supporting Facts*:     Trial judge clearly stated on record that he himself had noticed one of the jurors had "dozed off a time or two... It may have been a classic case of resting his eyes. But I'm here for comment if anybody wants to make a comment on that." Trial counsel failed to object. Tr. P. 1328:20–1329:7.

**Ground Three**:     Trial counsel was ineffective in failing to object to trial court's error in giving instructions which unconstitutionally diluted the state's burden of proof.

*Supporting Facts*:     Trial court instructed the jury on the elements of aiding and abetting when Petitioner was not indicted for this

offense/charge, but was charged as the principal.  Instructions impermissibly dilute the presumption of innocence.

**Ground Four**:      Trial counsel was ineffective for failing to object when the state pushed to try Petitioner under new armed robbery statute.

*Supporting Facts*:      Current armed robbery statute adds elements not in effect at the time the incident occurred.  Petitioner should've been tried under statute that was in effect when the offense occurred, trial counsel ineffective for not objecting (Tr. p. 104–111.) Indictments should've been quashed instead of amended. Trial counsel erred in not objecting to trial judge deleting from the indictments with his own pen.  (See Indictments in "original" transcript – record on appeal – they still read out completely R.O.A. p. 1362 and 1363.

**Ground Five**:      Trial judge erred in denying defense's motion to quash the indictments and dismiss charges due to state's violation of Rule 3(c).

*Supporting Facts*:       The State's violation of Rule 3c SCR Crim P, S.C. Const. Art. 1, Sec. 8, S.C. Const. Art. V, Sec. 4.  The state failed to timely act on the arrest warrants – warrants issued 1996, indicted August 1999 – The Solicitor failed to also file the indictments with the Clerk of Court (see indictments, they have no clock stamp @ record on appeal p. 1358–1373).  Also, state lacked subject matter jurisdiction by state's failure to comply.

**Ground Six**:      Trial counsel was ineffective for failing to impeach state's witness, Dr. Stacey Smithson, (Tr. p. 889–903).

*Supporting Facts*:      The state described the attack on the victim as "vicious."  Dr. Smithson corroborated these claims by stating that he found redness, abrasions and lacerations, etc.   However, Dr. Smithson's written examination report states that there were no signs of trauma on any part of the victim's body.   (Last paragraph on Tr. p. 1446, p. 1469 and p. 1471).

**Ground Seven**:      Trial judge erred in denying directed verdict.

*Supporting Facts*:      At the close of the state's case, Petitioner's counsel moved for a directed verdict, setting forth the state's inability to present "enough evidence that even giving it as much light as the Court wanted to," however, considering all the evidence, there was

8

no sufficient evidence to convict (sustain a conviction) or even send the case to the jury against Petitioner. (See. Tr. p. 1191 line 20 – p. 1207 line 5).

**Ground Eight**:     Appellate counsel Wanda H. Carter was ineffective in filing a frivolous brief on appeal.

*Supporting Facts*:     In her petition to be relieved as counsel, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), counsel states she has thoroughly reviewed Petitioner's lower court record, and in her opinion the record fails to demonstrated either preserved or other legally substantial issues to present to the court. However, transcript of trial proceedings and facts contained therein, will confirm that several arguably issues were preserved for appellate review.

[Doc. 1 at 6–23.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18

9

(7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."

*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When

determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the

allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at

10

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*,

11

134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for

relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for post-conviction relief ("PCR"). State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

14

there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[5]

> *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

---

[5]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." 559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

16

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner

17

demonstrates sufficient cause, he must also show actual prejudice to excuse a default.
*Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more
than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failing to raise the claim, the petitioner
may show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner
must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental
miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation
has probably resulted in the conviction of someone who is actually innocent").  Actual
innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,
523 U.S. 614, 623 (1998).  To demonstrate this actual innocence standard, the petitioner's
case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

As an initial matter, Respondent does not argue that Petitioner's habeas request is
untimely.  Respondent also concedes that Ground One has been properly exhausted, but
argues that the remaining seven grounds are procedurally barred.  Upon review, the Court
agrees.

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by
respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  It is a petitioner's burden
to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court
need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).
Here, Respondent argues Petitioner's grounds for relief are procedurally defaulted because

18

they were not presented to the South Carolina Supreme Court through Petitioner's petition for writ of certiorari following the denial of his PCR application. [Doc. 21 at 30–42.] For the reasons explained below, the Court agrees that Grounds Two through Eight are procedurally defaulted.

Petitioner did not raise any grounds from his direct appeal to the South Carolina Supreme Court, therefore no claims were exhausted through this mechanism. As noted, the only claim that Petitioner raised in his PCR appeal was:

> Whether trial counsel was ineffective for failing to argue that petitioner's indictments should be dismissed because the state violated his Sixth Amendment right to a speedy trial and petitioner was prejudiced by this deficiency because the indictments would have been dismissed had the issue been properly raised to the trial judge?

[Doc. 21-4.] Therefore, only Ground One of Petitioner's habeas application has been exhausted and the remaining grounds are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. In this case, Petitioner has failed to articulate cause for procedurally defaulting on these seven grounds for habeas relief. Petitioner filed a petition for writ of certiorari in which these issues could have been raised; however, these issues were not raised in Petitioner's petition for writ of certiorari to the South Carolina Supreme Court, even though the speedy trial issue was

19

properly raised. Petitioner argues that the bar on Ground 2 should be lifted because he "personally desired and sought to have each and every issue that was raised in the PCR hearing also raised on appeal. But was told by [PCR] appellate counsel that it was her choice of which issues to submit and that Petitioner could not submit his won [sic] legal arguments." [Doc. 32 at 46.] Because appellate counsel submitted a merits brief, Petitioner could not submit a brief on his own behalf as he would have been able to do had appellate counsel filed a *Johnson* petition, representing that there was no meritorious ground for appeal. [*See id.*][6] Petitioner puts forth no further evidence of cause or prejudice. Even if the Court were to liberally construe Petitioner's allegations about appellate PCR counsel as a claim under *Martinez v. Ryan*, the Court concludes Petitioner still cannot establish cause and prejudice. *See* -- U.S. ---, 132 S. Ct. 1309 (2012).

In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-

---

[6] Petitioner does not raise this issue in Grounds Three through Eight. Accordingly, because Petitioner does not raise cause and prejudice for these grounds, the Court need not consider it.

> of-trial-counsel claim is a substantial one, which is to say that
> the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the default of Ground Two if he demonstrates his PCR counsel was ineffective and that the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit. However, the Court in Martinez did not extend its holding to PCR appellate counsel, but only counsel in initial review collateral proceedings. *Cunningham v. Cartledge*, 5:11-cv-1037-JMC-KDW, 2012 WL 4006683, at *13 (D.S.C. Jun. 27, 2012).

Even if the Court did consider the claim against Cleary, Petitioner would fail. The Supreme Court established in *Strickland v. Washington* that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation—that is, "counsel's representation fell below an objective standard of reasonableness"—and (2) the prisoner was prejudiced as a result. 466 U.S. 668, 687–88 (1984). Petitioner has failed to demonstrate—or even argue—that Cleary's representation fell below an objective standard of reasonableness. While Petitioner states that he desired for Cleary to submit additional grounds in his PCR appeal, Petitioner has offered no explanation as to why it was objectively unreasonable for Cleary to fail to present other grounds to the PCR court and fails to acknowledge the possible strategy behind presenting Petitioner's strongest ground to the state court. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge

21

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

Therefore, Petitioner has failed to establish that, under *Strickland*, Cleary provided ineffective assistance, and thus, Petitioner has failed to overcome the procedural default of Ground Two. *See Martinez*, 132 S. Ct. at 1318 ("[A] prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland*."). Moreover, as to the remaining grounds, Petitioner cannot establish cause and actual prejudice because he abandoned the opportunity to preserve these specific issues; therefore, the Court recommends granting Respondent's motion for summary judgment as to Ground Two through Eight.

**Merits of Remaining Claim**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

22

independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see also Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's

23

holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7]  *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Upon review, the Court determines the South Carolina Supreme Court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. In his PCR petition, Petitioner claimed

---

[7] As noted, in *Strickland*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

that his trial counsel was ineffective for failing to argue prejudice in support of the motion to dismiss because of speedy trial violations.  Trial counsel made a pretrial motion to dismiss the charges based on a speedy trial violation. [Doc. 21-19 at 38.] Counsel acknowledged that Petitioner had filed two pro se motions for speedy trial. [*Id*. at 38–39.] Petitioner was kept in jail for two years, eight months and twenty days before he was brought to trial. [*Id*.]

At a hearing on the pretrial motions, the prosecution explained the trial delay because Petitioner was on his third lawyer, due to prior counsel's conflicts of interest. [*Id*. at 42.]   The prosecutor also stated that in the "180-day rule [for bringing cases to trial] is literally violated in 85 percent of the criminal cases in South Carolina." [*Id*. at 45.] The trial court denied the motion, noting that the indictments did not come down for the case until a month before the trial.

> I'd be a lot more inclined had this been in front of a judge and the judge had ordered a trial date to – I'm not unsympathetic to you now, because this is a horrendous delay and it's really not terribly well explained.  But I don't think that the situation in our state requires dismissal of the charges.  So I'm not going to dismiss the charges based on the arguments that I've heard thus far.

[*Id.* at 48.]

At the PCR evidentiary hearing, trial counsel testified that he filed a motion to reduce Petitioner's bond but not a motion to dismiss the charges due to speedy trial until immediately after the case was called for trial. [Doc. 21-27 at 93.] Counsel admitted that filing a motion may have prompted a trial and that the lapse between Petitioner's arrest and trial may have caused memory lapses in witnesses.  [*Id.* at 111–12.] Respondent argues that trial counsel made a strategic decision to delay the case so as to try Petitioner

25

separately from his brother, who had been offered a plea deal. [Doc. 21 at 21.] However, upon review of the record, the Court does not find that trial counsel made that link in his PCR court testimony.

The PCR Court applied the standard set forth in *Strickland v. Washington* and found that trial counsel was not deficient in his performance. Specifically, the Petitioner did not show "that counsel was deficient in his choice of tactics" and did not demonstrate that "the result at trial would have been different had trial counsel done what the [Petitioner] alleges he should or should not have done." [Doc. 21-27 at 173.] As a factual matter, the PCR court found that counsel was not aware of Petitioner's pro se motions for speedy trial until after they were filed and that Petitioner did not discuss the speedy trial motions with his attorney. [*Id.* at 175.] "Once filed, trial counsel argued the motion on behalf of his client articulating all the issues of concern to his client. There is no evidence of any concern about a speedy trial until [Petitioner] filed the motion himself. There is no evidence that [Petitioner] discussed any concerns about the timeliness of the trial with his attorney before filing the motion." [*Id.*] The PCR Court found all of Petitioner's allegations of ineffective assistance of counsel to be without merit. [*Id*. at 176.]

As noted, Petitioner filed a petition for writ of certiorari in the South Carolina Supreme Court, seeking review of the PCR court's decision on the speedy trial issue. [Doc 21-4.] After a briefing of the issues, the Court of Appeals issued a per curiam opinion, holding that

> We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: *Stepney v. State*, 278 S.C. 47, 48, 292 S.E.2d 41, 41 (1982) ("Alleged errors which may be reviewed on direct appeal may not be asserted for the first time in post-conviction proceedings."); *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006) ("In order to establish a claim of ineffective assistance of counsel, a PCR applicant must prove: (1) That counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) that the deficient

26

performance prejudiced the applicant's case."); *Smith v. State*, 309 S.C. 413, 415, 424 S.E.2d 480, 481 (1992) (holding a petitioner must prove there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984))).

[Doc. 21-10 at 4.]

Speedy trial violations are to be evaluated under a balancing test set forth by the Supreme Court in *Barker v. Wingo*, under which courts are to consider "the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. 514, 530 (1972). The length of delay acts as a "triggering mechanism" such that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

Here, the length of delay was "uncommonly long," which courts typically find is triggered as the delay approaches one year. *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995). Therefore, Petitioner meets the threshold requirement of a speedy trial violation and the Court will proceed to consider the remaining elements. As to Petitioner's assertion of his speedy trial right, Petitioner allegedly filed a pro se motion for a speedy trial in 1998, but no documentary evidence of it was available when pre-trial motions were heard. [Doc. 21-19 at 39.] Petitioner filed a second pro se motion for speedy trial on April 26, 1999, which trial counsel was not aware of until September 15, 1999. [Id. at 36–37.] The PCR court found trial counsel's testimony about his knowledge of the motion to be credible, and made the factual determination that counsel was not aware of the motion until after Petitioner filed it and that Petitioner did not discuss his timeliness concerns (or the motions) with his attorney. [Doc. 21-27 at 175.] Once counsel learned of the speedy trial motions, he presented the motions to the Court on his client's behalf. [Doc. 21-19 at 36–39.] At the

27

hearing on the pre-trial motions, Petitioner acknowledged that he did not discuss the motions with his attorney and that he did not file his first motion for speedy trial until almost two years after his arrest. [*See id.* at 46–47.] In *Thomas*, the Fourth Circuit gave weight to the delay in the assertion of a speedy trial right and the defendant's failure to discuss that right with his attorney. *See Thomas*, 55 F.3d at 150. Though the assertion of the speedy trial right is not required for a Sixth Amendment violation, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* (quoting Barker, 407 U.S. at 532). The *Thomas* court found that the failure to timely assert the speedy trial right (defendant in that case did eventually file a pro se motion for speedy trial) and failure to discuss the issue with his lawyer "weighed heavily against Thomas' claim of a speedy-trial violation," and the Court finds the same analysis is appropriate in this case. *See id.*

The government stated that the delay was due to three changes of defense counsel due to conflicts of interest, the last change being a personal conflict between Petitioner and counsel. [Doc. 21-19 at 42.] As a result of counsel changes, the *Schmerber* hearings to allow the prosecution to collect DNA from the defendants did not occur until April 1998 [*id.*], and DNA samples were not sent to the law enforcement lab until May 1998 [Doc. 21-24 at 121.] Moreover, before the date of the pretrial motions, the defense had not asserted a speedy trial right. [*Id.* at 44.] Trial counsel intimated to the trial court that the delay was due in part to a request for bond reduction [Doc.21-19 at 41], and testified to the PCR court that the delay was also due to waiting for DNA results to come back and to see if any plea deal would be offered [Doc. 21-27 at 100]. As to the reasons for the delay, the trial court found

that the prosecution's reasons for the delay were not "well explained" [Doc. 21-19 at 48], but did not find them to be illegitimate.  The trial court found that Petitioner did not experience any prejudice as a result of the delay. [*Id.*] Like the Court in *Thomas*, this Court need not determine if the government's reasons rise to the level of "reasonable diligence," which would preclude a speedy trial claim "absent a showing of specific prejudice." *Thomas*, 55 F.3d at 150.  While the Court is concerned about the lengthy delay, the Court cannot conclude that such reasons are not plausible.

Therefore, the Court turns to prejudice to Petitioner, noting at the outset that the trial court found there to be no prejudice to Petitioner.   Petitioner's primary argument as to prejudice is that the victim's eyewitness testimony was less reliable after the passage of time and that his alibi witness was not able to testify at trial because the passage of time caused her to be unsure whether she could provide an alibi. [Doc. 1-1 at 7–8.]   As to the first allegation, it would inure to Petitioner's benefit if his accuser's testimony was less reliable, so that argument is not compelling.  The *Barker* court held that there is a prejudice if defense witnesses are unable to recall facts because of a lapse of time.  *Barker*, 407 U.S. at 532.  Here, however, Petitioner claims prejudice in the victim being unable to remember the incident.

> [T]he *Barker* court also noted that deprivation of the right to a speedy trial may sometimes work to an accused's advantage.  *Id.* at 521.  Specifically, the court discussed how, as the delay between commission of a crime and the trial increases, witnesses may become available and memories may fade.  However, where the witnesses support the prosecution, it is the prosecutor's case that will be weakened, sometimes seriously so.

*Snipes v. Reynolds*, Case No. 07-CV-3516-CMC, 2008 WL 4457895, at *14 (D.S.C. Sept. 2008).  As to Petitioner's argument about his alibi witness, she did not testify at trial or at

29

the PCR hearing, which leaves this Court no evidence upon which to determine what her testimony would have been.  Without such evidence, the Court cannot determine that the South Carolina courts made an unreasonable finding in determining that Petitioner experienced no prejudice.

Trial counsel was the third counsel assigned to Petitioner's case.  He articulated a trial strategy at the PCR hearing, made a motion to dismiss the charges for a speedy trial violation as soon as he discovered Petitioner's motion, and researched the speedy trial case law in South Carolina. [Doc. 21-27 at 106].  Based upon trial counsel's actions as documented in the record, and the above analysis of Petitioner's speedy trial right, the Court cannot conclude that the state court incorrectly or unreasonably applied Supreme Court precedent in this instance.

### CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment [Doc. 15] be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 19, 2014
Greenville, South Carolina